Sarah Shapero (Bar No. 281748)
SHAPERO LAW FIRM
One Market, Spear Tower, 36th Floor
San Francisco, California 94105
Telephone:   (415) 293-7995
Facsimile:   (415) 358-4116

Attorney for Plaintiff,
MICHAEL B. CORTEZ
ANTOINETTE A. CORTEZ

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL CORTEZ, an individual; and ANTOINETTE CORTEZ, an individual; <br><br> Plaintiff, <br><br> v. <br><br> SECOND CHANCE HOME LOANS, LLC, a business entity; ALLIED SERVICING CORPORATION, a business entity; PNC BANK, NATIONAL ASSOCIATION, a business entity; and DOES 1-50, inclusive <br><br> Defendant | Case No.:  2:18-cv-01896-WBS-EFB <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT** <br><br> Date:    November 26, 2018 <br> Time:    1:30 pm <br> Ctrm.:   5, 14th Floor |

I.   **INTRODUCTION**

Plaintiffs brought this action as a result of Defendant PNC's conduct in regards to a second loan that was secured by Plaintiffs' property. In the case at hand, Plaintiffs loan with PNC should have been (and seemed to have been) modified or forgiven pursuant to the HAMP 2MP Program, however, despite this fact, after over 5 years they learned that the loan had not been modified or forgiven as required and that PNC had sold the loan to a third party who initiated foreclosure proceedings against the property.  PNC has continued to insist that the loan had been forgiven in 2011, however, unbeknownst to Plaintiffs, the loan was instead transferred to another company who remained completely silent for years (in fact, this company did not inform Plaintiffs that they purported to own the loan nor did this company ever send Plaintiffs any

monthly billing statements).  Defendant PNC now attempts to escape liability and requests that the Court dismiss the causes of action against it on clearly erroneous grounds – all of which necessarily fail.  For these reasons, and the reasons set forth below, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss or, in the alternative, grant Plaintiffs leave to amend.

II.    **STATEMENT OF FACTS**

Plaintiffs MICHAEL B. CORTEZ and ANTOINETTE A. CORTEZ ("Plaintiffs"), at all relevant times, have owned the Property located at 901 Innisfree Ct., Vallejo, CA 94591. (Complaint at ¶ 9).  Plaintiffs purchased the Property in October 2003. (Id.) To secure the purchase of the property, Plaintiffs obtained a First Lien loan from National City Mortgage in the amount of $579,750.00 (hereafter "First Lien"). (Id.)  Thereafter, in August 2005, Plaintiffs obtained a line of credit from National City Bank in the amount of $190,000.00, also secured by the Property (hereafter "Second Lien").  (Id.)

By way of merger, PNC Bank, National Association became the beneficiary of the Note and Deed of Trust for the Second Lien.  (Id. at ¶ 11).  In December 2013, PNC Bank transferred its interest in the Second Lien to an entity known as USMR Fund 10 LP.  (Id.) In January 2014, Defendant Second Chance obtained the beneficial interest in the Second Lien. (Id. at ¶ 12). Notably, however, the Assignments of Deed of Trust transferring the interest in Plaintiffs' Second Lien were not recorded for years and then were simultaneously recorded in the Official Records of the Solano County Recorder on August 9, 2016 just before Defendants began actively foreclosing on Plaintiffs' Property.  (Id.)  The misconduct at hand dates back several years during the time that Plaintiffs' loan was surreptitiously transferred between owners and servicers.

For years, Defendant PNC was the owner and servicer of both the First Lien and Second Lien. (Id. at ¶ 14).  In July 2010, Plaintiffs' First Lien was modified by Defendant PNC Bank under the Home Affordable Modification Program ("HAMP"). (Id. at ¶ 16).  The HAMP modification stated that Plaintiffs' First Lien was permanently modified and provided for a step-rate interest rate charged to Plaintiffs' loan.  (Id.)  Plaintiffs executed the HAMP modification with Defendant PNC. (Id.) At this time, Defendant PNC was also a participant in the HAMP Second Lien

1    Modification Program (2MP). (Id. at ¶ 16). Under the 2MP program, which PNC was a

2    participant in, after Plaintiffs accepted the modification offer on the First Lien, PNC was required

3    to either (1) offer to modify the Second Lien or (2) extinguish the Second Lien. (Id.)  PNC did not

4    do so, despite Plaintiffs' repeated inquiries regarding modification of the Second Lien during the

5    process of the review and modification implementation on the First Lien. (Id. at ¶ 17).

6    Instead, Plaintiffs were told that they would have to apply for a modification on the Second Lien,

7    separate and apart from the modification they received on the First Lien.  (Id.)

8        Soon thereafter, however, PNC began sending Plaintiffs correspondence which suggested that

9    the Second Lien was closing.  (Id. at ¶ 19).  In fact, Plaintiffs continually contacted PNC through

10   the end of 2011 and into 2012 but were repeatedly advised that the account was closed. (Id. at ¶

11   22).   Thereafter, for years, Plaintiffs received no communication on the Second Lien and no

12   monthly billing statements whatsoever. (Id. at ¶ 23).  Thus, based on the inactivity on the Second

13   Lien, lack of any contact,  and the fact that they were expressly informed that the account had

14   been closed, Plaintiffs believed that this debt had been charged off and closed.  (Id. at ¶ 24).

15       In December 2016, however, Plaintiffs unexpectedly received correspondence from an entity

16   known as Special Default Services, Inc. which indicated that it was the trustee of the Second Lien

17   and that the Second Lien had accumulated $36,387.13 in arrearages for supposed missed

18   payments, foreclosure fees, and costs.  (Id. at ¶ 25).  Prior to this time, Plaintiffs had not received

19   any statements from Defendant Second Chance or Allied which informed them of the amount due

20   each month, where to send the payment, and to whom the debt was owed. (Id. at ¶ 26)  Likewise,

21   Plaintiffs had never received notice that the servicing of their loan had been transferred to Allied.

22   (Id.)  Plaintiffs were shocked!  Plaintiffs had been informed by PNC that the account was closed

23   and received no communication from any loan servicer (written or otherwise) on this loan in

24   years.  (Id.)

25       Soon thereafter, on or about March 10, 2017, Defendant Second Chance directed its

26   foreclosure trustee Special Default Services to record a Notice of Default for the Property.

27   Pursuant to the Notice of Default, Defendant Second Chance claimed that the total arrearages

28   owed on the loan was purportedly $38,085.69. (Id. at ¶ 28).  On June 16, 2017, Defendant Second

1   Chance directed its foreclosure trustee Special Default Services to record a Notice of Trustee's

2   Sale for the Property, scheduling the foreclosure sale of Plaintiffs' Property for July 11, 2017. (Id.

3   at ¶ 29).

4   **III.    ARGUMENT**

5           **1.    Legal Standard**

6           The courts have long held a strong policy in favor of determining disputes on the basis of

7   their merits and not on technicalities of pleading rules.  Foman v. Davis, 371 U.S. 178, 182

8   (1962).  As such, dismissal is reserved for such cases where it is clear that a cause of action

9   cannot be saved by any amendment.  Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir.1996).  In

10  considering a motion pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true all

11  material allegations in the complaint, as well as all reasonable inferences to be drawn from them.

12  Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).  The complaint must be read in the light

13  most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th

14  Cir. 2001).  To survive a motion to dismiss, a plaintiff need only plead facts sufficient to "state a

15  claim for relief that is plausible on its fact."  Bell Atlantic Corporation v. Twombly, 550 U.S. 544,

16  570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows

17  the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

18  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

19          A dismissal is only appropriate where the plaintiff fails to state a claim supportable by any

20  cognizable legal theory.  Balistreri v. Pacific Police Department, 901 F.2d 696, 699 (9th Cir.

21  1990).  A complaint need only contain "a short and plain statement of the claim that will give the

22  defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  Conley

23  v. Gibson, 355 U.S. 41, 47 (1957) (abrogated on other grounds by Bell Atlantic Corporation v.

24  Twombly, 550 U.S. at 563 (2007)).  For these reasons, dismissal without leave to amend is

25  improper unless it is clear that a complaint could not be saved by any amendment.  Schneider v.

26  California DOC, 151 F.3d 1194, 1196 (9th Cir. 1998).

27          In the present case, Plaintiffs pleaded sufficient facts to allege the nature and extent of the

28  wrongful conduct committed by Defendant.  These factual allegations are thereafter incorporated

4

by reference into each applicable Cause of Action.  Each Cause of Action identifies its particular

elements and the allegations made against Defendants.  As such, Plaintiffs have sufficiently

pleaded allegations to place Defendants on notice of the claims against them and the grounds

upon which those claims rest.  Because of this, the motion to dismiss should be denied or,

alternatively, Plaintiffs should be granted leave to amend.

> **2.      Plaintiffs Claims Against PNC are Timely and Were Brought Within the Applicable Statute of Limitations Periods.**

In the present case, Plaintiffs have sufficiently pleaded that they did not discover

Defendant PNC'S wrongdoing until December 2016, when he received the first correspondence

from Special Default Services, Inc., indicating that the Second Lien was not in fact forgiven.

(Complaint at ¶ 25). Further, Plaintiffs also pleaded that they could not have reasonably

discovered the misconduct until this date because, from late 2011 (when Plaintiffs were informed

that the loan was closed) until December 2016 (when Plaintiffs learned that the loan was not

closed), they received zero correspondence indicating that the loan had not been closed, as PNC

had stated. Therefore, the statute of limitations on Plaintiffs' claims did not begin to run until

December 2016, when they actually discovered the existence of these causes of action.  (Sanchez

v. South Hoover Hospital, (1976) 18 Cal.3d 93, 97).  Defendant moves to dismiss all of Plaintiff's

causes of action on the grounds that the statute of limitations began to run in 2012, when PNC last

took action on the loan.  (MTD at p. 5).  For the forgoing reasons, this is untrue.

In California, the delayed discovery rule states that the statute of limitations for a cause of

action does not begin to run until the existence of a cause of action is actually discovered, or

could have been discovered.  (Sanchez, 18 Cal.3d at 97).  When a plaintiff suspects that a harm

has been committed against them, the plaintiff is required to "conduct a reasonable investigation

after becoming aware of an injury, and are charged with knowledge of the information that would

have been revealed by such an investigation." (Fox v. Ethicon Endo-Surgery, Inc., (2005) 35 Cal.

4th 797, 808). In late 2011 or early 2012, Defendant PNC informed Plaintiffs that the loan was

forgiven.  (Complaint at ¶ 22).  Thereafter, Plaintiffs received no correspondence regarding the

loan until December 2016, when they first learned that the loan had not been closed.  (Complaint

at ¶ 25).  Thus, it was not until Plaintiffs received the communication in December 2016 that they had any knowledge of Defendant PNC's actions.  Therefore, Plaintiffs' statute of limitations did not begin to run until the time that they gained the knowledge that Defendant had committed the causes of action alleged herein.  Further, in situations such as this, where reasonable minds could differ regarding when discovery was made, resolution of when the statute of limitations began to run is a question of fact, inadmissible for disposition on demurrer.  (Jolly v. Eli Lilly & Co., (1988) 44 Cal.3d 1103, 1112).  For these reasons, Defendant's motion to dismiss on statute of limitations grounds must be overruled or, in the alternative, Plaintiffs should be granted leave to amend to add in additional facts regarding the tolling of the statute of limitations.

**3.  Plaintiffs' Claims Are Not Barred by the Doctrine of Judicial Estoppel.**

Defendant first argues that Plaintiffs are judicially estopped from asserting these claims because (1) the claim against Defendant is property of the estate and (2) Plaintiffs failed to disclose assets of the estate.  (MTD at p. 6-7).  For the foregoing reasons, these arguments fail.

Defendant first agues that Plaintiffs' claims against PNC are property of the bankruptcy estate.  However, this is untrue because the claims against PNC revested to Plaintiffs when the bankruptcy case was dismissed.  First. Plaintiffs filed for Chapter 13 bankruptcy protection on July 8, 2017.  The Chapter 13 bankruptcy was dismissed court on April 5, 2018.  (Plaintiffs' RJN, Exh. A).  Pursuant to 11 USC § 349(b)(3), when the bankruptcy was dismissed, any property that may have belonged to the bankruptcy estate (such as the claims against PNC) reverted back to Plaintiffs and, thus, Plaintiffs have standing to bring this action.

Defendant also argues that Plaintiffs did not schedule their claims against PNC in the bankruptcy and, thus, they are judicially estopped from asserting their claims in this action.  (MTD at p. 7). As articulated by the Supreme Court, one of the elements that needs to be met when a court decides whether to apply the doctrine of judicial estoppel is "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'"  New Hampshire v. Maine, 532 U.S. 742, 750 (2001).  In the present case, Plaintiffs' bankruptcy plan was never confirmed and Plaintiffs did not receive a discharge in

1   the bankruptcy.  Thus, the law is clear that judicial estoppel does not apply because Plaintiffs did

2   not persuade the bankruptcy court to accept Plaintiffs' position in the bankruptcy.  (Chancellor v.

3   OneWest Bank, 2012 WL 1868750 (N.D. Cal. May 22, 2012) (borrower's wrongful foreclosure

4   and RESPA claims not barred by judicial estoppel where chapter 13 plans not confirmed); In re

5   Oparaji, 698 F.3d 231, 238 (5th Cir. 2012) (refusing to apply judicial estoppel to creditor because

6   confirmation of plan did not represent judicial acceptance of a position in a chapter 13 case

7   dismissed without discharge).  Furthermore, any failure to schedule the claims against PNC was

8   the result of Plaintiffs' mistake and inadvertence, thus, if the Court determines that Plaintiffs were

9   required to schedule these claims, Plaintiffs respectfully requests that the Court allow Plaintiffs

10  time to reopen the bankruptcy in order to amend their schedules to include this claim, as the Court

11  in Ah Quin v. Cnty. of Kauai Dep't of Transp., 733 F.3d 267, 271 (9th Cir. 2013) found was

12  appropriate to remedy any judicial estoppel issues.

13       **4.  Plaintiffs Have Sufficiently Pleaded a Cause of Action for Negligence.**

14       Plaintiff alleges that Defendant PNC acted negligently when it failed to either extinguish

15  or modify Plaintiff's loan as required by HAMP.  (Complaint at ¶ 65).  Defendant moves to

16  dismiss Plaintiff's cause of action based on two erroneous arguments.  First, Defendant argues

17  that it did not owe Plaintiff a duty of care.  MTD at p. 8.  Also, Defendant argues that Plaintiff has

18  not pleaded causation or damages.  MTD at p.9.  As set forth below, all of these arguments fail.

19  However, should the Court deem any of Plaintiff's allegations insufficient, he should be granted

20  leave to amend.

21       Defendant first argues that it did not owe Plaintiff a duty of care.  However, this is untrue.

22  Recently, California courts have determined that a duty of care arises when processing a

23  borrower's application for a loan modification.   (Alvarez v. BAC Home Loans Servicing, 228

24  Cal.App.4th 941)( "defendants owed them a duty to exercise reasonable care in the review of

25  their loan modification applications once they had agreed to consider them");(Garcia v. Ocwen

26  Loan Servicing, LLC, (2010) 2010 US Dist. LEXIS 45375 (servicer breached the duty of care

27  when it negligently transferred borrowers loan modification application to wrong department).

28

The Northern District of California has routinely found that a duty of care exists in processing a borrower's loan modification application. Powell v. Wells Fargo Home Mortg. (N.D. Cal. April 29, 2016) 2016 US Dist. LEXIS 57537;  Aquino v. US Bank, N.A., (N.D. Cal. April 26, 2016) 2016 US Dist. LEXIS 76088. In MacDonald v. Wells Fargo Bank, N.A., the Honorable Haywood S. Gilliam found the following:

> *Alvarez* marked a sea change in jurisprudence on this issue.  Federal district courts applying California law after *Alvarez* overwhelmingly hold that the California Supreme Court would recognize a duty of care during the loan modification review process. *See Johnson v. PNC Mortgage*, 80 F. Supp. 3d 980, 2015 U.S. Dist. LEXIS 17485, 2015 WL 662261, at * 4 (N.D. Cal. Feb. 12, 2015) ("Once PNC offered the Johnsons an opportunity to modify their loan, it owed them a duty to handle their application with ordinary care."); *Hild v. Bank of America*, N.A., 2015 U.S. Dist. LEXIS 13419, 2015 WL 401316, at * 6 (C.D. Cal. Jan. 29, 2015); *Medrano v. Caliber Homes Loans, Inc.*, 2014 U.S. Dist. LEXIS 177576, 2014 WL 72369256, at *11 (C.D. Cal. Dec. 19, 2014) ("Recently, however, the tide has turned. The California courts of appeal now recognize that lenders cannot offer modifications, generally, and then claim they have no duty to avoid processing the applications for those modifications in a slipshod manner."); *Gilmore v. Wells Fargo Bank N.A.*, 75 F. Supp. 3d 1255, 2014 U.S. Dist. LEXIS 173738, 2014 WL 7183796, at *9 (N.D. Cal. Dec. 16, 2014); *Cortez v. CitiMortgage, Inc.*, 2014 U.S. Dist. LEXIS 176180, 2014 WL 7150050, at *8 (C.D. Cal. Dec. 11, 2015) (same); *Banks v. JPMorgan Chase Bank*, N.A., 2014 U.S. Dist. LEXIS 164565, 2014 WL 6476139, at *12 (C.D. Cal. Nov. 19, 2014); *Shapiro v. Sage Point Lender Services*, 2014 U.S. Dist. LEXIS 154790, 2014 WL 5419721, at *9-10 (C.D. Cal. Oct. 24, 2014); *Segura v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 143038, 2014 WL 4798890, at *14 (C.D. Cal. Sept. 26, 2014); *Penermon v. Wells Fargo Home Mortgage*, 2014 U.S. Dist. LEXIS 121207, 2014 WL 4273268 (N.D. Cal. Aug. 28, 2014) (plaintiff was not entitled to modification, but "once [defendant] provided Plaintiff with the loan modification application and asked her to submit supporting documentation, it owed her a duty to process the completed application once it was submitted").

MacDonald v. Wells Fargo Bank, N.A., (ND Cal., April 24, 2015) 2015 US Dist LEXIS 54142 at *13-14.  The Court ultimately found that "Alvarez [is] more likely to be adopted by the California Supreme Court. Having agreed to consider Plaintiffs for a loan modification, Wells Fargo was required to process that application with ordinary care." Id. at * 14.  Based on the foregoing, Plaintiffs have established that when Defendant agreed to consider their application for a loan modification, it was required to process that application with ordinary care including the modification or extinguishment of the loan as required by the HAMP guidelines.  Therefore, Defendant's argument fails.

1    Defendant also argues that Plaintiffs have not pleaded damages that were caused by its

2    negligence.  MTD at p. 9.   This is wholly untrue.  Plaintiffs have specifically pleaded that, as a

3    result of Defendant's negligence, they remain liable on a loan that should not exist and liable for

4    arrears that accumulated on that loan.  Complaint at ¶ 74.  Furthermore, Plaintiffs have pleaded

5    that suffered severe emotional distress as a result of Defendant's negligence.  Id. For these

6    reasons, Plaintiff is entitled to recovery of emotional distress damages and, therefore, Defendant's

7    argument fails.

8    **5.  Plaintiffs Have Sufficiently Pleaded a Cause of Action for Unfair Business Practices.**

9    California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent

10   business act or practice and unfair, deceptive, untrue or misleading advertising." (Cal. Bus. & Prof.

11   Code § 17200.) An act violates the UCL if it is "unlawful," "unfair" or "fraudulent." (Rubio v.

12   Capital One Bank, (9th Cir. 2010) 613 F.3d 1195, 1203.)  The statute "has a broad scope that allows

13   for 'violations of other laws to be treated as unfair competition that is independently actionable'

14   while also 'sweep[ing] within its scope acts and practices that specifically prescribed by any other

15   law.'" (Hauk v. JP Morgan Chase Bank USA, (9th Cir. 2009) 552 F.3d 1114, 1122 (quoting Kasky

16   v. Nike, Inc., (2002) 27 Cal. 4th 939, 949).) Pursuant to this section, there are three varieties of

17   unfair competition-- acts or practices which are unlawful, or unfair, or fraudulent. (Berryman v.

18   Merit Prop. Mgmt., Inc., (Cal. Ct. App. 2007) 152 Cal. App. 4th 1544, 1554.) "Because section

19   17200 is written in the disjunctive, a business act or practice need only meet one of the three criteria-

20   unlawful, unfair or fraudulent- to be considered unfair competition under the UCL." (Buller v.

21   Sutter Health (2008)160 Cal.App.4th 981, 986.)  A plaintiff can plead a UCL violation under the

22   "unlawfulness" prong by pleading that a business practice violated a predicate federal, state, or

23   local law. (See Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180

24   (citing State Farm Fire & Cas. Co. v. Superior Court, (Cal. Ct. App. 1996)1103 45 Cal. App. 4th

25   1093).)  To assert a UCL claim, a plaintiff must have "'suffered injury in fact and . . . lost money

26   or property as a result of the unfair competition.'" (Rubio, 613 F.3d at 1203-04 (quoting Cal. Bus.

27   & Prof. Code § 17204 (alteration in original).)

28   To state a claim under the UCL's unfairness prong, a plaintiff must show either (1) "a

9

practice that undermines a legislatively declared policy or threatens competition," or (2) "a practice that has an impact on its alleged victim that outweighs the reasons, justifications, and motives of the alleged wrongdoer." (Busalacchi v. Ariz. Pub. Serv. Co., (S.D. Cal. July 27, 2012) 2012 U.S. Dist. LEXIS 105227, 2012 WL 3069948, at *5 (citing Lozano v. AT&T Wireless Servs., Inc., (9th Cir. 2007) 504 F.3d 718, 736). "Unfair behavior is that which is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" Id. (quoting Bardin v. Daimlerchrysler Corp., (2006) 136 Cal. App. 4th 1255, 1260). The fraudulent prong of the UCL is "governed by the reasonable consumer test: a plaintiff may demonstrate a violation by show[ing] that [reasonable] members of the public are likely to be deceived." (Rubio, 613 F.3d at 1204.) Defendant moves to dismiss this claim on the ground that Plaintiffs failed to plead a violation under the unlawful and unfair prongs because, it claims, Plaintiffs failed to adequately allege an underlying claim. (MTD at p. 10). This argument fails because Plaintiff has alleged sufficient facts under both the unfair and unlawful prongs by pleading a viable underlying claim for negligence. In addition, Plaintiffs have plainly alleged an unfair or fraudulent practice by Defendant intended to circumvent the mandates of HAMP. In addition, contrary to Defendant's assertion, Plaintiffs have alleged damages. (See Complaint generally.) However, should the court deem these allegations insufficient, Plaintiffs respectfully request leave to amend.

## IV.   CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully requests that the Court deny Defendant PNC'S Motion to Dismiss in its entirety. However, should the Court deem any of Plaintiffs' insufficient, Plaintiffs respectfully request leave to amend.

DATED: November 13, 2018              Respectfully submitted,

SHAPERO LAW FIRM


/s/ Sarah Shapero
Sarah Shapero, Esq.
Attorney for Plaintiffs
MICHAEL B. CORTEZ
ANTOINETTE A. CORTEZ