UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| MICHAEL B. CORTEZ, an individual; and ANTOINETTE A. CORTEZ, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>SECOND CHANCE HOME LOANS, LLC, a business entity; ALLIED SERVICING CORPORATION, a business entity; PNC BANK, NATIONAL ASSOCIATION, a business entity; and DOES 1-50, inclusive,<br><br>    Defendant. | No. 2:18-cv-01896 WBS EFB<br><br>MEMORANDUM AND ORDER RE: MOTION TO DISMISS |

----oo0oo----

Michael Cortez and Antoinette Cortez initiated this action to address alleged mishandling of their mortgage and alleged wrongful foreclosure of their property. Presently before the court is defendant PNC Bank's Motion to Dismiss Plaintiffs' Complaint. (Docket No. 39.)

1

I. <u>Factual and Procedural Background</u>

Plaintiffs Michael Cortez and Antoinette Cortez purchased their home in October 2003. (Compl. ¶¶ 9-10.) To secure the purchase, plaintiffs obtained a first loan on the home from National City Mortgage. (<u>Id.</u>) In August 2005, plaintiffs obtained a second line of credit, which was secured by the property. (<u>Id.</u>) Soon thereafter, PNC Bank became the owner and servicer of both mortgages. (<u>See</u> <u>id.</u> ¶¶ 11, 14.)

In July 2010, PNC Bank modified the first mortgage under the Home Affordable Modification Program ("HAMP"). (<u>Id.</u> ¶ 15.) While going through the process of review and modification implementation on the first mortgage, plaintiffs claim that they repeatedly inquired about a modification of the second mortgage as well. (<u>Id.</u> ¶ 17.) Plaintiffs allege that PNC Bank was a participant in the HAMP Second Lien Modification Program ("2MP") and under that program, PNC Bank was required to either (1) offer to modify the second mortgage or (2) extinguish that mortgage. (<u>Id.</u> ¶ 16.) Instead, plaintiffs contend that they were told that they had to apply for a separate modification of that loan. (<u>Id.</u> ¶ 18.)

While plaintiffs were applying for a modification on the second mortgage, they allege that they contacted PNC Bank and were repeatedly advised that their account with the bank was closed. (<u>Id.</u> ¶¶ 19-22.) Plaintiffs claim that in the years since, they received no communication from the bank or monthly billing statements on the loan until December 2016 when Special Default Services, Inc. told them that the second loan had accumulated over $35,000 in arrearages. (<u>Id.</u> ¶¶ 23-25.)

2

After plaintiffs learned about a pending foreclosure on their home (Id. ¶ 29), they brought this action on June 26, 2018 in Solano County Superior Court against defendants Second Chance Home Loans ("Second Chance"), Allied Servicing Corporation ("Allied"), and PNC Bank (Docket No. 1). Defendants removed this action to this court on July 5, 2018. (Docket No. 1.) On July 9, 2018, after discussion with the parties, the court granted plaintiffs' Motion for a Temporary Restraining Order (Docket No. 3) and temporarily enjoined the foreclosure sale of plaintiffs' home. (Docket No. 10.) Plaintiffs then filed a Motion for a Preliminary Injunction (Docket No. 11), but withdrew the motion (Docket No. 31) and stipulated to the dismissal of defendants Second Chance and Allied (Docket No. 33).

Plaintiffs allege claims of negligence and the violation of California Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200 et seq., as to defendant PNC Bank. Defendant PNC Bank moves to dismiss the complaint against it in full.

II. Discussion

    A.    Legal Standard

On a Rule 12(b)(6) motion, the inquiry before the court is whether, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the plaintiff has stated a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint that offers mere "labels and conclusions" will not survive a motion to dismiss. Id. (internal quotation marks and citations omitted).

B. Statute of Limitations

Under California law, negligence claims have a two-year statute of limitations. Cal. Civ. Proc. Code § 335.1. Separately, "[a]ny action to enforce any cause of action pursuant to [the UCL] shall be commenced within four years after the cause of action accrued." Cal. Bus. & Prof. Code § 17208.

PNC Bank contends that plaintiffs' negligence and UCL causes of action are time barred. Plaintiffs filed their complaint on June 26, 2018. According to PNC Bank, the complaint does not allege that PNC took any action since 2012, so the end of that year marks the relevant accrual date for plaintiffs' causes of action as against the bank. Plaintiffs respond by arguing that their claims did not accrue until December 2016, when they actually discovered the existence of these causes of action.

Ordinarily, a claim accrues and the statute of limitations begins to run on the date of the injury. Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 1109 (1988). However, under California's delayed discovery rule, "the accrual date of a cause of action is delayed until the plaintiff is aware of her injury and its negligent cause." Id.; see also Ward v. Westinghouse Canada, Inc., 32 F.3d 1405, 1407 (9th Cir. 1994) ("[U]nder the delayed discovery rule, the statute begins to run when a

reasonable person in the plaintiff's position is on 'inquiry notice' of 'potential wrongdoing.'"). Common law accrual rules like the delayed discovery rule also apply to claims brought under the UCL. See Aryeh v. Canon Bus. Sols., Inc., 55 Cal. 4th 1185, 1196 (2013) ("[W]e conclude the UCL is governed by common law accrual rules to the same extent as any other statute.").

"The question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion." Ovando v. Cnty. of Los Angeles, 159 Cal. App. 4th 42, 61 (2d Dist. 2008) (citing Jolly, 44 Cal. 3d at 1112); see also Ward, 32 F.3d at 1408 ("Under California law, the question of when [the plaintiff] was on inquiry notice of potential wrongdoing is a factual question.")

Plaintiffs allege that they did not discover PNC Bank's alleged malfeasance, the failure to use reasonable care in handling their loan modification application, until December 2016. They claim that PNC Bank repeatedly advised them through the end of 2011 and into 2012 that their account with the bank was closed. (Compl. ¶ 22.) Plaintiffs allege that they did not receive any communication regarding this loan until December 2016, when they were informed that the second mortgage was to be foreclosed on due to missed payments. (Compl. ¶¶ 25-26.)

Taken as true, these allegations could support the application of the delayed discovery rule. Plaintiffs allegedly took reasonable steps to inquire into the status of their loan modification and did not discover the alleged wrongdoing because

5

they were informed that their account was closed.  PNC Bank was
in "a far superior position to comprehend the act and the
injury," because they possessed the necessary information about
the status of plaintiffs' loan modification application and
account.  See Prudential Home Mortg. Co. v. Superior Court, 66
Cal. App. 4th 1236, 1247, (4th Dist. 1998), as modified on denial
of reh'g (Oct. 29, 1998) ("[T]here is an underlying notion that
plaintiffs should not suffer where circumstances prevent them
from knowing they have been harmed.").  Since these facts also
support the allegation that PNC Bank's actions were unlawful for
the purposes of the UCL, the delayed discovery rule could apply
to that cause of action too.  See Aryeh, 55 Cal. 4th at 1196-97.
Accordingly, defendants have not established as a matter of law
that these claims are time-barred.[1]

    C.    Effect of Bankruptcy Proceedings

PNC Bank claims that the fact that plaintiffs filed a
Chapter 13 Bankruptcy Petition on July 8, 2017[2] prevents this
court from adjudicating this case.  First, PNC Bank maintains
that plaintiffs' claims became a property of the bankruptcy
estate once they filed their bankruptcy petition.  Second, PNC
Bank argues that judicial estoppel bars plaintiffs from
litigating their claims since plaintiffs failed to disclose these

---

[1] If plaintiffs are correct, they would have had until December 2018 to file their negligence claim and December 2020 to file their UCL claim.

[2] Because plaintiff does not oppose PNC Bank's Request for Judicial Notice (Docket No. 40) and the court finds the material in the Request to be properly subject to judicial notice, the court hereby GRANTS the Request to take judicial notice of plaintiffs' Chapter 13 bankruptcy petition.

6

claims as assets of their estate when they filed for bankruptcy.

          1.   <u>Property of the Bankruptcy Estate</u>

The filing of a petition in bankruptcy commences the case and creates a bankruptcy estate. 11 U.S.C. § 541(a). The bankruptcy estate includes "all legal and equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Any causes of action possessed by the debtor at the time of the filing of the bankruptcy petition become part of the bankruptcy estate. <u>Cusano v. Klein</u>, 264 F.3d 936, 945 (9th Cir. 2001).

The bankruptcy court ultimately dismissed plaintiffs' bankruptcy action without confirming a Chapter 13 plan. <u>In re Cortez</u>, No. 17-24500, at Docket No. 74 (Bankr. E.D. Cal. Apr. 5, 2018). A dismissal of a bankruptcy case "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." 11 U.S.C. § 349(b)(3). The purpose of this section is "'to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case.'" <u>In re Aheong</u>, 276 B.R. 233, 239 (B.A.P. 9th Cir. 2002) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 338 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 48-49 (1978)). Because their causes of action revested upon the dismissal of their bankruptcy petition, plaintiffs have standing to assert their claims.

          2.   <u>Judicial Estoppel</u>

"[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion." New Hampshire v. Maine, 532 U.S.

742, 750 (2001) (internal quotation marks omitted). The doctrine is designed "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." Id. at 749-50 (internal quotation marks and citation omitted).

Three non-exhaustive factors inform the decision whether to apply the doctrine. "First, a party's later position must be 'clearly inconsistent' with its earlier position." Id. at 750. "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." Id. "A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id. at 751.

"In the bankruptcy context, the federal courts have developed a basic default rule: If a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action." Ah Quin v. Cty. of Kauai Dep't of Transp., 733 F.3d 267, 271 (9th Cir. 2013). Even though plaintiffs concede that they failed to schedule their claims in their bankruptcy plan, they maintain that judicial estoppel does not apply because they did not obtain a confirmation of their bankruptcy plan.

Examining the three factors enumerated by the Supreme

Court in New Hampshire v. Maine, the first factor clearly applies. Plaintiffs-debtors omitted the claims from their bankruptcy schedule that they now assert. Nevertheless, the other two factors do not favor the application of judicial estoppel. Plaintiffs failed to persuade a court to accept their position. The bankruptcy court did not certify any bankruptcy plan; nor is this court aware of any court orders that relied upon the submitted schedules. See Chancellor v. OneWest Bank, No. C 12-01068 LB, 2012 WL 1868750, at *6 (N.D. Cal. May 22, 2012) (conducting the same analysis under the second factor). The fact that their bankruptcy petition was dismissed also means that plaintiffs did not "gain[] an advantage" by switching positions. See Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001); see also New Hampshire, 532 U.S. at 750-51 ("Absent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations,' and thus poses little threat to judicial integrity." (citations omitted)). PNC Bank has not identified any unfair detriment they would suffer if plaintiffs are not estopped from asserting their claims.

Finally, the court observes that judicial estoppel is a discretionary doctrine to be applied flexibly. See Ah Quin, 733 F.3d at 272. Where plaintiffs' counsel has maintained that plaintiffs' failure to schedule their claims against PNC Bank was a result of mistake and inadvertence, the court is not convinced that the balance of equities favors the application of judicial estoppel. See New Hampshire, 532 U.S. at 753 ("[I]t may be appropriate to resist application of judicial estoppel when a

9

party's prior position was based on inadvertence or mistake."). Accordingly, the doctrine of judicial estoppel does not bar plaintiffs from alleging their claims.

D. Negligence

To prevail on their negligence claim under California law, plaintiffs must show that PNC Bank owed them a legal duty, that it breached the duty, and that the breach was a proximate or legal cause of their injuries. Merrill v. Navegar, Inc., 26 Cal. 4th 465, 477 (2001). The existence and scope of a duty are legal questions for the court. Id. (citation omitted). Generally, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal. App. 3d 1089, 1096 (3d Dist. 1991).

In the context of processing a loan modification, California appellate courts have reached "different conclusions as to whether a lender owes a borrower a duty of care." See Meixner v. Wells Fargo Bank, 101 F. Supp. 3d 938, 952 (E.D. Cal. 2015) (Nunley, J.). Some courts have followed Lueras v. BAC Home Loans Servicing, LP, 221 Cal. App. 4th 49 (4th Dist. 2013), and its progeny to hold that a residential lender does not owe "a common law duty of care to offer, consider, or approve a loan modification, or to explore and offer foreclosure alternatives." Id. at 67. Other courts have followed Alvarez v. BAC Home Loans Servicing, L.P., 228 Cal. App. 4th 941 (1st Dist. 2014), and its line of cases to find that loan servicers are "required to exercise reasonable care in their dealings with borrowers seeking

a loan modification." Id. at 949.

With the exception of one decision recognizing a split among the California Courts of Appeal, the Ninth Circuit has held, albeit in unpublished decisions, that lenders generally owe no duty of care to borrowers during the loan modification process. See Anderson v. Deutsche Bank Nat. Tr. Co. Americas, 649 F. App'x 550, 552 (9th Cir. 2016); Badame v. J.P. Morgan Chase Bank, N.A., 641 F. App'x 707, 709 (9th Cir. 2016); Deschaine v. IndyMac Mortg. Servs., 617 F. App'x 690, 693 (9th Cir. 2015); Benson v. Ocwen Loan Servicing, LLC, 562 F. App'x 567, 570 (9th Cir. 2014). But see Yau v. Deutsche Bank Nat. Tr. Co. Americas, 525 F. App'x 606, 609 (9th Cir. 2013) (recognizing the split among the California Courts of Appeal).

Judges within this district, however, are divided on this question. Compare Moore v. Freedom Mortg. Corp., No. 1:17-CV-628-LJO-EPG, 2017 WL 2633411, at *5 (E.D. Cal. June 19, 2017) (O'Neill, J.) (finding no duty of care); Shupe v. Nationstar Mortg. LLC, 231 F. Supp. 3d 597, 605 (E.D. Cal. 2017) (England, J.) (same); Sullivan v. JP Morgan Chase Bank, NA, 725 F. Supp. 2d 1087, 1094 (E.D. Cal. 2010) (Burrell, J.) (same) with Newman v. Bank of N.Y. Mellon, No. 1:12-CV-1629 AWI MJS, 2017 WL 4325772, at *10 (E.D. Cal. Sept. 29, 2017) (Ishii, J.) (finding a duty of care); Martinez v. Flagstar Bank, FSB, No. 2:15-CV-01934 KJM CKD, 2016 WL 3906810, at *8 (E.D. Cal. July 19, 2016) (Mueller, J.) (same); Hsin-Shawn Sheng v. Select Portfolio Servicing, Inc., No. 2:15-CV-0255-JAM-KJN, 2015 WL 4508759, at *5 (E.D. Cal. July 24, 2015) (Mendez, J.) (same); Meixner, 101 F. Supp. 3d at 954-55 (Nunley, J.) (same). This court has previously agreed with

11

Judges O'Neill, England, and Burrell and disagreed with Judges Ishii, Mueller, Mendez, and Nunley.

When this court first confronted the issue, there was no split among judges in this district. See Argueta v. J.P. Morgan Chase, No. CIV. 2:11-441 WBS, 2011 WL 2619060, at *5 (E.D. Cal. June 30, 2011). At that time, Judges O'Neill and Burrell had previously held that financial institutions do not owe a common law duty of care to borrowers during the loan modification process. Dooms v. Fed. Home Loan Mortg. Corp., No. CV F 11-0352 LJO DLB, 2011 WL 1232989, at *12 (E.D. Cal. Mar. 31, 2011) (O'Neill, J.); Sullivan, 725 F. Supp. 2d at 1094 (Burrell, J.). On four occasions since, this court adhered to this view that there is no duty of care in this context. Deschaine v. IndyMac Mortg. Servs., No. CIV. 2:13-1991 WBS, 2013 WL 6054456, at *6 (E.D. Cal. Nov. 15, 2013), aff'd, 617 F. App'x 690 (9th Cir. 2015); Jent v. N. Trust Corp., Civ. No. 2:13-1684 WBS CKD, 2013 WL 5806024, at *3 (E.D. Cal. Oct. 28, 2013); Bunce v. Ocwen Loan Servicing, LLC, No. CIV. 2:13-00976 WBS, 2013 WL 3773950, at *6 (E.D. Cal. July 17, 2013); Solomon v. Aurora Loan Servs. LLC, No. CIV. 2:12-209 WBS, 2012 WL 2577559, at *5 (E.D. Cal. July 3, 2012).

On April 24, 2015, Judge Nunley, however, held that lenders may owe borrowers a duty of care during the modification process. Meixner, 101 F. Supp. 3d at 954-55. He adopted much of the reasoning from the Alvarez decision and its line of cases. Id. Judges Mendez and Mueller soon thereafter adopted that same holding and reasoning. See Hsin-Shawn Sheng, 2015 WL 4508759, at *5 (Mendez, J.); Martinez, 2016 WL 3906810, at *8 (Mueller, J.).

12

After these decisions created a split within the district, this court carefully considered the differing views and remained unpersuaded that financial institutions, even in the case of a loan modification, owe a duty of care to borrowers. Willis v. JPMorgan Chase Bank, N.A., 250 F. Supp. 3d 628, 633-34 (E.D. Cal. 2017); see also Ryan-Beedy v. Bank of New York Mellon, 293 F. Supp. 3d 1101, 1114 (E.D. Cal. 2018) (reaffirming this holding earlier this year). "The reasoning in the [] Alvarez and Daniels California Court of Appeals decisions do not change the court's view." Willis, 250 F. Supp. 3d at 633. "A loan servicer does not owe a borrower a common law duty of care in processing a loan modification application" because it falls squarely within the scope of a lending institution's conventional role as a lender of money. Id. at 634. "A borrower and lender's rights, duties, and obligations '[a]re set forth in the note and deed of trust, the Forbearance Agreement, federal and state statutes and regulations, and the directives and announcements of the United States Department of the Treasury and Fannie Mae.'" Id. at 633-34 (quoting Lueras, 221 Cal. App. 4th at 68). Nothing has happened in the interim that causes this court to change its longstanding view.

Accordingly, because PNC Bank did not owe plaintiffs a duty of care in processing their application for a loan modification, the court will dismiss plaintiffs' negligence cause of action.

E. Unfair Competition

The UCL defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice and unfair,

13

deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "Because [the UCL] is written in the disjunctive, it establishes three varieties of unfair competition -- acts or practices which are unlawful, or unfair, or fraudulent." Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544 (4th Dist. 2007) (internal quotation marks and citation omitted). An act can violate any or all of these prongs. Id.

Even though plaintiffs have not alleged a viable underlying claim for negligence, plaintiffs claim that they have alleged an unfair or unlawful practice by showing that PNC Bank intended to circumvent the mandates of the HAMP. Plaintiffs maintain that they have standing to bring this claim because they have alleged damages.

The UCL is not meant to be an all-purpose substitute for contract and tort actions. Zhang v. Superior Court, 57 Cal. 4th 364, 371 (2013). The act is meant to "provide[] an equitable means through which both public prosecutors and private individuals can bring suit to prevent unfair business practices and restore money or property to victims of these practices." Id. "Because of this objective, the remedies provided are limited." Id. (internal quotation marks and citations omitted).

Prevailing plaintiffs under the UCL are limited to injunctive relief[3] and restitution. Id. Plaintiffs cannot

---

[3] Plaintiffs have not demonstrated an entitlement to injunctive relief. PNC Bank no longer owns the second loan, so it can no longer collect on the loan. (See Compl. ¶¶ 28-30.) This also means that it no longer engages in the unfair business practice complained of, at least with respect to plaintiffs. Moreover, this court is unaware of any authority that allows it to order declaratory relief under the UCL.

14

recover damages or attorney fees under the UCL. Id. (citation omitted); see also Pineda v. Bank of Am., 50 Cal. 4th 1389, 1402 n.14 (2010) ("[C]ompensatory damages are not recoverable as restitution."). Restitution is limited to restoration of any interest in money or property that was acquired by the means of unfair competition. Zhang, 57 Cal. 4th at 371. Plaintiffs must show that they lost money or property and that the money or property was acquired by the defendant. Id.

Here, plaintiffs have not identified any interest in money or property that was acquired by PNC Bank as a result of the alleged wrongful acts. Plaintiffs' complaint indicates that they made no payment on the second loan after they applied for the loan modification. (See Compl. ¶¶ 16-26.) Instead, their injury is merely that they remain liable on a loan that they claim should not exist and liable for arrearages on that loan. As plaintiffs' own opposition makes clear, this is a claim for damages. Because plaintiffs have not pleaded a plausible entitlement to restitution, they cannot recover under the UCL.[4]

Accordingly, this court will dismiss plaintiffs' UCL cause of action.

IT IS THEREFORE ORDERED that PNC Bank's Motion to Dismiss Plaintiffs' Complaint (Docket No. 39) be, and the same hereby is, GRANTED.

Plaintiffs have twenty days from the date this Order is

---

[4] Because the court finds that plaintiffs are not entitled to a remedy under the UCL, the court does not decide whether plaintiffs have sufficiently alleged that PNC Bank engaged in an "unlawful, unfair or fraudulent business act." See Cal. Bus. & Prof. Code § 17208.

signed to file an Amended Complaint, if they can do so consistent with this Order.

Dated: November 28, 2018

*/s/ William B. Shubb*
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE